

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| AWAD ODEH | ) | Code, Sections 1343 and 1957 |

1:25-cr-276
Judge John F. Kness
Magistrate Judge M. David Weisman
RANDOM / CAT.3

**COUNT ONE**

The SPECIAL MAY 2024 GRAND JURY charges:

1. At times material to this indictment:

   a. Defendant AWAD ODEH operated North American Refinery NAR, Inc., which did business under the name North American Refinery ("NAR"). NAR was a registered Illinois corporation that was based in Bridgeview, Illinois.

   b. ODEH owned and operated Apex Motorworks, Inc., which was a registered Illinois corporation that was based in Burr Ridge, Illinois.

   c. ODEH and/or his family members had control and signature authority on a number of bank accounts that received funds on behalf of NAR, including a Woodforest National Bank account ending in 3418 (the "Woodforest National Bank Account"), a Lakeside Bank account ending in 0152 (the "Lakeside Bank Account"), and a Huntington Bank account ending in 3160 (the "Huntington Bank Account").

   d. NAR, through ODEH, entered into Investment Agreements with investors. Pursuant to the terms of the Investment Agreements, investors provided

funds to NAR to be used for the acquisition of precious metals or in connection with NAR's business of precious metals refining.

  e. The Investment Agreements guaranteed investors a return on investment equal to a certain percentage of gross profits generated from the investment funds or a specific annualized return on investment.

  f. The Investment Agreements stated that NAR would provide investors with a monthly report or update on the growth or status of their investments and any generated returns by the investments.

  g. The Investment Agreements included a personal guarantee from ODEH that ODEH would pay investors the full amount of their investments and the specified returns on investments in the event NAR was unable to do so.

  2. Beginning no later than in or around June 2017, and continuing until at least on or about December 14, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AWAD ODEH,

defendant herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

  3. It was part of the scheme that ODEH, in order to obtain funds from investors, knowingly and falsely represented to investors, including but not limited to Investors A through D, that NAR would use investor funds solely for the acquisition

2

of precious metals or in connection with NAR's business of precious metals refining, when in fact ODEH knowingly and fraudulently used investor funds for personal and other non-NAR-related purposes.

4. It was further part of the scheme that ODEH, in order to obtain funds from investors, falsely represented to investors that they would receive guaranteed annualized returns on their investments in amounts between approximately 10% and 50% of the investments, when ODEH knew that NAR did not generate enough revenue to fund the returns on investment guaranteed to investors under the Investment Agreements.

5. It was further part of the scheme that ODEH, both orally and through the Investment Agreements and other NAR documents, made false representations to investors that NAR was financially sound and able to meet its financial commitments, when ODEH knew that NAR did not generate enough revenue to fund the returns on investment guaranteed to investors under the Investment Agreements.

6. It was further part of the scheme that ODEH, both orally and through the Investment Agreements and other NAR documents, falsely told investors that he would personally repay investors the full amount of their investments and the returns on investment specified in the Investment Agreements in the event NAR defaulted in making such payments to the investors, when ODEH knew that he would be unable to repay investors the full amount of their investments and the promised returns on investment.

7. It was further part of the scheme that ODEH provided and caused to be provided documents to investors that purported to represent the existence of legitimate investments in NAR, when ODEH knew that the documents that he provided to investors were fraudulent and that NAR had not used investor funds for the acquisition of precious metals or in connection with NAR's business of precious metals refining, as ODEH had represented in those documents.

8. It was further part of the scheme that ODEH provided and caused to be provided small, sporadic return-on-investment payments to investors to give the investors the false appearance that their investments in NAR were legitimate and that they would be paid consistent with the Investment Agreements.

9. It was further part of the scheme that ODEH did not use investor funds for the acquisition of precious metals or in connection with NAR's business of precious metals refining, but instead ODEH fraudulently used investor funds for his own purposes, including to pay his personal expenses, to enrich other members of his family, and to fund Apex Motorworks, Inc., an unrelated car company ODEH owned and operated.

10. It was further part of the scheme that ODEH solicited existing NAR investors to obtain additional funds from them, and in doing so: (a) made false statements about the nature of any investment in NAR, about the use of investor funds, and about NAR's financial condition; and (b) provided additional documents, including Investment Agreements and Investment Riders, to investors in connection with any further investments.

11.     It was further part of the scheme that, when investors confronted ODEH about repayment of their investments and the guaranteed returns on investment, ODEH falsely promised investors that he would return the funds that the investors provided along with the guaranteed returns when, in truth, ODEH knew that he and his family members had spent the investors' funds and he was not able to repay the investors.

12.     It was further part of the scheme that ODEH did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

13.     As a result of the scheme, ODEH fraudulently obtained at least approximately $3.6 million from at least approximately 13 investors.

14.     On or about April 3, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AWAD ODEH,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate wire transfer processed through the Federal Reserve System in the amount of approximately $150,000 from Investor A's account at BMO Bank to the Woodforest National Bank Account, which funds ODEH falsely represented NAR would use for the acquisition of precious metals or in connection with NAR's business of precious metals refining;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL MAY 2024 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2. On or about June 2, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AWAD ODEH,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate wire transfer processed through the Federal Reserve System in the amount of approximately $50,000 from Investor B's account at CIBC Bank to the Lakeside Bank Account, which funds ODEH falsely represented NAR would use for the acquisition of precious metals or in connection with NAR's business of precious metals refining;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL MAY 2024 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2. On or about November 12, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AWAD ODEH,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate wire transfer processed through the Federal Reserve System in the amount of approximately $50,000 from Investor C's account at TCF National Bank to the Huntington Bank Account, which funds ODEH falsely represented NAR would use for the acquisition of precious metals or in connection with NAR's business of precious metals refining;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL MAY 2024 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2. On or about December 14, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AWAD ODEH,

defendant herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from ODEH, using the email address "awad@northamericanrefinery.com," to Investor D in the Northern District of Illinois, in which ODEH falsely represented the status of Investor D's investment in NAR;

In violation of Title 18, United States Code, Section 1343.

**COUNT FIVE**

The SPECIAL MAY 2024 GRAND JURY further charges:

On or about April 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AWAD ODEH,

defendant herein, knowingly engaged in a monetary transaction, namely, the purchase of Cashier's Check #53188687 in the amount of $150,000 with funds from the Woodforest National Bank Account, which funds were used to make a payment to an NAR investor, and which purchase was in and affecting interstate commerce and involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343;

In violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION

The SPECIAL MAY 2024 GRAND JURY further alleges:

1. Upon conviction for an offense in violation of Title 18, United States Code, Section 1343, as set forth in this indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of at least approximately $3,600,000.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Sarah Streicker on behalf of the
UNITED STATES ATTORNEY